Good afternoon. Good afternoon, Your Honors. Katherine Young from the Federal Public Defender's Office for Appellant Mr. Abbassi, and I would like to try to reserve a few minutes of my time for rebuttal. Mr. Abbassi is here appealing the denial of his motion to suppress. The was parked at a car wash in his car. Justice was in the passenger seat. The Anaheim Police Department had been following Justice in San Bernardino due to a warrant for grand theft. The Anaheim Police Department asked the San Bernardino Police Department to arrest Justice whose car was parked in a car wash stall. The Anaheim Police Department watched Justice leave his car and get into Abbassi's car which was parked in another car wash stall. Both Anaheim and San Bernardino police officers were at the car wash. Justice was arrested, handcuffed, and placed in a police car without incident. He complied. There was no evidence that he had weapons or anything illegal or dangerous. There were no wants or warrants for Abbassi and the officers had no evidence against Abbassi. They were given the erroneous information that Abbassi and Justice were roommates. After having arrested Justice, officers then surrounded Abbassi's car, boarded him out of his car at gunpoint, handcuffed him, and questioned him without Mirandizing him. It all took place in 15 seconds. The question that we're disputing, it took place in 15 seconds. Let me put it this way. First of all, do you think that this was an improper Fourth Amendment seizure? Yes, absolutely your honor. It wasn't a Terry Frisk? No, absolutely not. What was wrong? Why couldn't the officer do a Terry Frisk on Abbassi? Well your honor, we're arguing this isn't a Terry Frisk because of the Washington case and I'll get to that later. With respect to a Terry Frisk, you have to have a reasonable suspicion. In this case, we're arguing there was none. But separately... He's driving, he's driving a car with a well-known, well-known, well-known and escaped felon, wanted for grand theft, and that isn't enough reason to have reasonable suspicion that he may be involved with the gentleman he's invited into his car? In this case, they're not driving. I think that's significant for some legal cases. They weren't driving together. They both parked separately at the car wash. Justice got out of his car and came into Abbassi's car. So then Abbassi takes off and he's stopped? No, they're both, they're parked at the car wash when they're surrounded by officers. There's no movement of any cars at all. I'm sorry. There's some circumstantial evidence that they know each other, right? There is. And that they, and the justice is a known felon getting into a car with another gentleman, right? That's correct. So they ask the other gentleman to step outside. They don't ask him, they have guns out and they tell him to step outside. Why isn't that reasonable suspicion that he may be engaged in some activity with justice and therefore a Terry Frisk for officer safety might be necessary? Well, I think this is distinguishable from some of the other cases because the warrant was for a grand theft in another jurisdiction which was completed. So there's no evidence of an ongoing crime that Abbassi might be involved in with justice. But additionally, if there were a Terry Frisk, it would not have discovered the cocaine. There's substantial law that's cited in the papers that a Terry Frisk is for weapons only. That's for officer safety, right? Officer security. So he asks him not, do you have any cocaine? He asks him, do you have anything illegal in your possession, including perhaps a switchblade? Well, we're arguing that that question is both over-inclusive and under-inclusive. It's not directed to the point, the purpose for which the officer said he asked the question, which was to discover something that might hurt the officer or endanger the officer. And we're also arguing that at that point he was under arrest, so he couldn't be interrogated or asked. He was in custody at that time? Yes. Although in 15 seconds, he had been converted from a mere bystander into custody. He had been pulled out of the car at gunpoint. Multiple officers were surrounding him with guns. And handcuffing is okay to do, Terry Frisk, isn't it? Well, there has to be, I think, some reasonable suspicion. There was no reasonable suspicion that Abbasi had done anything wrong. Okay, I've got your point. There was no reasonable suspicion that he was any danger to the officers. They knew nothing against Abbasi, and justice, as I say, was on, was wanted for a warrant, something in the past, no indication of any ongoing crimes, and no indication that he was dangerous. And the authority, Washington v. Lambert, which the because here you've got during the day, they're in a public car wash, Abbasi, who was not suspected of anything, was ordered out of his car and handcuffed, and he's surrounded by armed officers with their weapons drawn and aimed at him. In Washington, you've got two men suspected of 19 armed robberies, stopped in an underground parking garage, officers shone spotlights, pointed their guns at the men, they were ordered out of the car, handcuffed, patted down, and the police argued that's an investigatory stop. The Ninth Surrogate said no. In this nation, all people have a right to be free from the terrifying and humiliating experience of being pulled from their cars at gunpoint, handcuffed, or made to lay face down on the pavement. The police may not employ such tactics every time they have an articulable basis for thinking that someone may be a suspect. The infringement on personal liberty resulting from so intrusive an investigatory stop is simply too great. So under ordinary circumstances where they've only got reasonable suspicion to make an investigatory stop, the Ninth Circuit said drawing weapons, using handcuffs, and other restraints will violate the Fourth Amendment. But the problem, I take it, the problem you're really focused on is the admission which led to the drugs, which led to everything else, and so I guess I didn't see you respond to the government's point that under Patain, which was a plurality but's been applied in the Ninth Circuit in many cases, you can't suppress the fruits of an un-Mirandized statement. How do you respond to that? You know, I don't remember that. There was one case that decided we talked about a voluntary statement and this was not voluntary. You can't call it voluntary if he's being pulled out of the car at gunpoint. But I apologize, I don't remember specifically the point that you're suggesting. Well, the point I'm making is that even if the statement should have been, even if a Miranda warning should have been given at that point in time, just accepted for purposes of argument, there is Supreme Court case law that talks about how the remedy for that is not the suppression of physical evidence, which is what came out here, which was the bag of cocaine, which in turn led to the search of the car and everything else that followed. And I didn't see a response to that point that the government made in your reply brief. No, I'm sorry, I don't remember it. I think in this case, the only way they got the evidence was to ask him the question. It would not have been uncovered by a frisk because that was only for weapons and he did have no weapons. If there's no further questions, I'd like to reserve a few minutes of my time for rebuttal. Thank you very much. Thank you. Good afternoon, your honors. May it please the court. Carolyn Small on behalf of the United States. With respect to the traffic stop, the defense in their brief only made a fifth amendment argument with respect to the traffic stop. They've now argued that argument for the first time that the stop and the frisk also violated the fourth amendment, but their brief really only argued that the question, do you have anything illegal on you was a violation of Miranda because the defendant was in custody at the time that that statement was made. So I just wanted to point out that the briefs don't actually make a fourth amendment challenge to the stop or to the frisk. So if we were to conclude that a fourth amendment challenge was properly raised, what is the reasonable articulable suspicion for a Terry stop at the car wash of Mr. Abbasi? Well, this court addressed a very similar fact pattern in United States versus Vaughan, which is 718 F second 332. And in that case, the driver and the passenger in a car had arrest warrants out. There was a third person, the defendant in the backseat. He did not have a warrant out for his arrest. The officers stopped the car. Guns were drawn. They ordered everybody out and to freeze, including the person in the backseat who did not have an was for all they knew that could have been somebody who was hitchhiking and had no relationship to the arrestees. Nonetheless, when that person tried to walk away from the scene, the officers ordered him back when he didn't comply. They handcuffed him, handcuffed him, kept him at the scene. And the court said, while there might not have been probable cause to arrest him, the officers were fully justified in detaining him at the scene to confirm his identity, to make sure that he was not associated with the arrestees and to ensure that there would be no evidence found on him that might connect him to the crimes for which the arrestees were wanted. And the court said that there was reasonable suspicion to frisk him to make sure that he wasn't armed and that he wouldn't pose a danger to the officers or to the public. And that case is squarely on point here. And for those same reasons articulated in Vaughn, the officers here had a reason to stop the defendant and to frisk him. And actually, this case is stronger because in Vaughn, as the court said, the officers had no idea who the person in the backseat was or if he was in any way connected to the arrestees. Whereas in this case, the officer had information from Anaheim police who were doing surveillance that the two, Chad Justice, the arrest, the individual with the arrest warrant and the defendant had arrived at the car, washed in separate cars. And Mr. Justice had gotten out of his own car and into the passenger seat of the defendant's car. And they had information, albeit mistaken, that they were roommates. So they didn't have to presume that there could be a connection. They had information that there was a connection between the two. You also make in the alternative an inevitable discovery argument. Is it clear that a pat down for that's limited to weapons would have led to the discovery of what I take would be a relatively small and would not feel like a weapon amount of cocaine? I take the defense point that the officer didn't necessarily have during a frisk wouldn't have been able to reach into the pockets of the defendant absent that statement. And so I think if the court were to decide this was a custodial interrogation that required Miranda and that Miranda violation required suppressing the such that it would reach the inevitable discovery argument. I think at that point, the district court didn't address potential factual issues as to what kind of pants the defendant was wearing, whether the officer would have felt this packaging on the outside of the defendant's pants during a during a frisk absent the statement. And so I think if the court does reach that issue, which we don't think that it needs to, it would need to go back to the district court for some additional factual findings. No longer argue the remand as you had in your brief. I mean, an affirmance on that ground as you did in your brief, it would have to be remanded. Correct. I think that's right. But again, we don't think the court needs to reach that issue. There are a number of prior issues that would allow the court to affirm without ever getting to the inevitable discovery issue. I'd like to address. What about the position that when Abbasi had handcuffs placed on him, he was in custody and therefore should have been Miran dies before. Does any questions? Well, your honor, this was not he was not in custody at that time. Again, it was a an investigatory detention at that time. And so to be clear, we're talking about the 10 to 15 seconds between when he's first pulled out of the car and when he makes his admission. And during that time, the officers are investigating. They're trying to determine who the defendant is. They're trying to determine whether he's associated with the determination of whether he's in custody based on what a reasonable, objective, objective person would see as a possibility to leave. Well, during any for during any seizure, a person is not free to leave. The court looks at the intrusiveness of the stop and the reasonableness of the officer's conduct to decide when an investigatory detention transforms into a full fledged custodial arrest, because even in a Terry stop, a person is not free to leave. They're being seized. And so here the officer's conduct was reasonable. Again, we're talking about a very short amount of time, 10 to 15 seconds. The officers did pull out their guns and handcuff the defendant. But that was reasonable under the circumstances, given they weren't just this wasn't an ordinary traffic stop. They're executing not just one arrest warrant, there's six, multiple, multiple arrest warrants. And that's an officer Rawlings declaration at ER and the and just one factual correction I wanted to make to the defendant's brief. They say that there are four armed officers. Anaheim is on the scene. San Bernardino is on the scene. That's not actually what the record what the evidence is in the record. The evidence in the record is that there were only two officers on the scene. It was Officer Mata and Officer Rawlings from San Bernardino. That's at ER 83 through 84 paragraph seven. The Anaheim officers are relaying information to dispatch who's relaying to the officers. And so you have one officer who's executing the arrest warrant on Mr. Justice. And then you only have one other officer who is dealing with this unknown person one on one. And so it's reasonable in those circumstances for officer safety to handcuff this person, briefly detain them to make sure that they're not going to pose a threat to officer safety while they're trying to execute multiple arrest warrants on the other person in the defendant's car. So the officer's actions in this in these circumstances were reasonable and it did not transform into a custodial arrest. I can't ask your position on special condition two, which is, do you concede now that that special condition is at least under this court's cases is not proper? There is an unpublished disposition where the court did say that it was overly that condition was overly broad because it did not specify that the risks that must be posed to the persons in or the specific risks that must be posed have to be posed by the defendant to those persons and organizations. So there is unpublished an unpublished case on it. Our position is that there's really no a common sense reading I think shows that the specific risks that have to be disclosed are the risks posed by the defendant, even though the condition doesn't spell that out because it would be nonsensical for the condition to say that the defendant has to disclose risks posed by some other person. That being said, if the court did deem that provision plainly unconstitutional, our position would be that the proper remedy would be for the court to imposing whatever alternative condition that it deems appropriate. Do you have a proposal that we ourselves give an instruction as to what that condition should say? I think I think in PED the court determined that it was up to the district court to craft the language, but I think this court has given guidance and other again unpublished cases that have said adding that that additional language posed but specific risks posed by the defendant to those organizations and persons. I think the court in unpublished cases has said that that language is appropriate and actually the Central District of California has amended its general orders so that the new standard condition for this type of provision includes that language. Includes that it should be posed the specific risk must be posed by the defendant right to those persons and organizations, right? Okay, thank you. Thank you. I just want to address a few points. I think that the Anaheim officers did remain at the site because according to the declaration ER 201 it says that justice was arrested and taken into custody by Anaheim police officers and prior to that it says that Anaheim police officers were surveilling him. So I think they remained at the site and so there were two sets of officers both Anaheim and San Bernardino at the time of his arrest. The other point I wanted to address is the issue about Vaughn and I think Vaughn is distinguishable for a number of reasons. First of all Vaughn involved a large-scale drug trafficking operation that was ongoing and so there was some sense that when these people were driving in the car altogether they might be part of this ongoing operation. Whereas here you have a car that stopped and a crime committed by justice in the past in some other jurisdiction and so there's no evidence that there's an ongoing crime. In addition Vaughn made several attempts to escape and to abscond which makes that case a little bit different. I didn't get that last distinction. Would you repeat that? Vaughn made several attempts to walk away after the car was stopped and they had to keep bringing him back. And then there was one other issue I wanted to address with respect to whether the cocaine would have been found during the pat-down or the frisk and there are some cases cited in the briefing where for example Minnesota v. Dickerson the Supreme Court held that crack cocaine seized from a pocket was the product of an unlawful search because the officer had already determined that the defendant's pocket did not contain a weapon. And then in Miles which is a Ninth Circuit case a small box containing ammunition should have been suppressed because it was discovered by a pat-down which exceeded the strictly circumcised limits of Terry. So unless there is a motion to adjourn the hearing the hearing of the United States of America v. Wasi Adel Abassi is submitted.
judges: Bea, Collins, Bress